Good morning, Your Honors. Robert Karakoff for the appellant in this case. James Clark, I'd like to request seven minutes to reply. That clock up there is counting down. That's fine. Okay. You know, if you can keep an eye on it, that'd be great. Thank you, Your Honor. Your Honors, this is, at its core, a whistleblower case. The appellant witnessed the respondent, as he was an employee of Anheuser-Busch, selling alcoholic products which were advertising that they had more alcohol content than was advertised. The slap suit, as we allege this to be, is designed to punish Mr. Clark and to dissuade other employees from coming forward and cooperating in the context of the class action that arose in connection with the alcoholic content labeling issue. As the Court knows, the anti-slap statute must be construed broadly. It includes any conduct, any act that's in furtherance of a defendant's right of free speech or petition, and that's exactly what happened here. And the facts that show this kind of break into two circumstances. First, what did Anheuser-Busch do? What admissions did it make? What positions has it taken that demonstrate that this action arises as a result of Mr. Clark's free speech and petitioning activities? And then there's also the analysis of Mr. Clark's activities itself and whether or not those are, indeed. Scalia. Let me ask you a question about this. As I read the California cases, and you've already heard me confess my ignorance about certain portions of California law, the Court engages in a two-step analysis in slap cases, anti-slap cases. It says, first, was this protected? Does this case arise out of protected activity? Let's assume that it did here for a second. Did the Court ever get to step — the Court found that it did not. And therefore, am I right in thinking the Court never got to step two? I thought the Court did say there was protected activity here, just the claim here was incidental. Incidental. Incidental to that protected activity. So it failed at step one. That is correct. It was protected activity, but the claim conduct was incidental to it. It failed at step one. That's accurate. Let's assume that you get past step one for a second and we get to step two. We now know on this record, and I'm asking, the State court didn't address — the district court didn't address step two, but should we? My position is that you should not address step two in this case. We're asking that step two be remanded to the trial. I know you are, but here's what we know on step two, and here's what I'm — they're We have no idea whether it's a trade secret. Is page 13 in this record? It is not. Why not? That's a question I can't answer. Well, but you're the appellant. I mean, you were supposed to put together a record for us. Well, actually, page 13 is a document that the appellees have, that Anheuser-Busch has control over. But wasn't it in the State — did the trial judge see it? No. It was never — So we have no idea whether it has a trade secret in it or not. That's correct. And, indeed, I think that's an important point on step two. Okay, so that's why I'm having trouble with their probability of success on the trade secret claim. But they also have a contract claim. And the contract claim is you agreed not to blab about our information. I'm rephrasing the contract, but I think it's fair. Blab about our information outside the company once you're left. And your defense to that is, no, no, I have a whistleblower defense. And we now know that the information that you disclosed demonstrated no wrongdoing because courts have said they're perfectly entitled to vary within those — within those limits without violating State or Federal law. So hasn't your whistleblower defense to the contract claim been eviscerated? I don't think so for two reasons. One, while the trial court — and I'm not associated with the class action, but while the trial court in the class action that was consolidated, I believe, in the Northern District of Ohio has granted the motion to dismiss, the issue is still not finally decided. It's on appeal. And as I understand it, again, I'm not up to speed on this, there is a State court action still pending in the State of Missouri on the claims. But I still think the underlying purpose and the fundamental public policy behind the whistleblower action is applicable here. I mean, we have an employee who saw something under 1102.5 of the Labor Code that he reasonably believed was illegal activity, and he took action to report it to take some action in connection with it. Well, why did he reasonably believe it was — he reasonably believed it was illegal activity because he thought these two regulations applied, State and Federal ones that — turns out they didn't. So is he — does he later — does the employee get to make a decision on the spot whether something is illegal and disclose it? Because then — then contractual provisions that say you can't disclose our secrets become meaningless because every employee says, well, I thought secret was a big deal and I disclosed it. Turns out it wasn't, but I'm still protected. Yeah. And the answer is absolutely yes. If an employee has a reasonable good-faith belief that what he's witnessing and reporting is an illegal act, regardless of whether it actually is, under California Labor Code section 1102.5, the employee is protected as a whistleblower. I took you, of course. I want you to go back, if you can, to step one. Okay. Tell me why this report was wrong in your view in finding that you hadn't satisfied step one. Well, again, I think there were two issues there. Thank you, Your Honor. The admissions or statements that have been made by Anheuser-Busch so far and the conduct of Mr. Clark. You know, first and foremost, there was the press release that we've cited in the papers where Anheuser-Busch actually makes a press release on its web page about Mr. Clark. Do your motives in suing you or defaming you later, you, your client later, have anything to do with whether or not the activities your client engaged in are covered by the SLAPP statute? It may show they're terrible people, but that doesn't have anything to do with your step one, whether it's protected activity, does it? I think that it does, and for two reasons. One, while we're not required to prove that as a defendant, because that's – there's a clear plethora of State law that says that we're not required to do that. In this case, we actually have an admission of what their subjective intent was, and that's one reason, maybe not even the best reason. I think the better reason is – But don't you have to determine – you have to demonstrate first that it's protected activity. Yes. After all, if it wasn't protected activity, their statements about what a bad person Mr. Clark is and what he's doing don't make a difference. So focus on why this was protected activity. And to do that, I guess I'd ask you to look at – or talk to us about Renewable Resources Coalition v. Pebble Mines, because it seems like that's the most challenging case for you. Okay. And I don't – Because the court held that purchasing confidential information was not protected activity. Here, he had transported, I guess, the confidential information. But I'm trying to figure out the difference there. Okay. I'll try and address the issues as well as I can. Judge McGee asked better than I. Tell me why Renewable Resources doesn't say this isn't protected activity. Well, I guess I'll go back to my original – I'm not exactly 100 percent up to speed on the Renewable Resources case. My apologies in advance. I guess the way I was looking at the statement by Anheuser-Busch is more of an admission that this was a protected activity. And it was the protected activity that, in Mr. Clark, in instigating the lawsuits, using information from Anheuser-Busch and instigating the lawsuits, that's what – And I would read California law until Renewable Resources as supportive of the notion that using information to either instigate a lawsuit or support a lawsuit is protected activity. I'm not sure either of you cited Renewable Resources. You did. But Renewable Resources, which may be an outlier, may be wrong, it's a court of appeals opinion, seems to say the opposite. So the question is what happens? As I understood Renewable Resources, though, Renewable Resources, they acquired the information, they paid for it, and it wasn't initially for purposes of litigation. At least that's the way I read the facts.  That's the way I read the facts. And I – that to me was a distinguishable feature from the other two cases where the California Supreme Court said that initiating litigation, acquiring information for purposes of litigation, is protected activity. And the way I saw your case here, the protected activity here, and which Judge Burrell seemed to agree with, was that your – Mr. Clark was – got this information and was using it for purposes of litigation. But what he said was, as alleged in Anheuser's complaint, that purpose is incidental to their core causes of action, which are breach of contract and trade secrets. Correct. That that was incidental to their claims. And he said if you look at California case law, when protected activity is an incidental piece of information to the underlying causes of action, then the SLAPP statute doesn't apply. Correct. That's the way I saw what was going on here. So for me, the critical question is, why is this incidental, only incidental, which is what the direction that Judge Burrell took. That's exactly right. You should adopt Judge Pius's eloquent distinction of renewable resources. You can't do better. So taking that. I will fully adopt that. Thank you, Judge. But I think that's exactly the point. And actually, this is where the Navalier case comes into play. And Navalier says it isn't the – you don't view these activities of the defendant in terms of the context of the allegations made by the plaintiff, but rather what the actual actions of the defendant were. And I think that's where we get to Mr. Clark's actions and how that plays a role and whether or not those actions were taken in connection with his exercise of his right of free speech and petition. And so, for example, the things that the trial court cited were, you know, misappropriation, receipt of this page 13, delivery of page 13 to class counsel, and the failure to sign the contract. Those are the four facts that were cited by the trial court. And the failure to certify, how could that have – I'm trying to figure out in this case how his failure to certify harmed Anheuser-Busch. He'd already engaged in the actions before he certified, had he not? Yeah, he had. He failed to certify. So the harm came from his prior actions, not from his failure to certify. I would absolutely agree. And I think that goes to, you know, the conduct of Anheuser-Busch in terms of whether or not this case arises in connection with Mr. Clark's free speech activities. One of the damages they're seeking in the case are the attorney's fees that were incurred in the class action itself. Go back to – I'm still not sure you've addressed what Judge Pius asked you. I mean, it's the heart of what the district court said. The district court said, well, there is some protected activity going on here, but the claims of – his claimed actions here were incidental to that protected activity. They weren't protected activity itself. They were incidental to it. Is that a distinction that California law draws? And if so, why do you think the judge drew it incorrectly? It is a distinction. And I think the judge drew it incorrectly because if you look at the actions one by one and ask would these actions have occurred but for the fact that Mr. Clark had instigated the class action, the answer is no. None of these actions, none of the four actions that were cited by the trial court would have occurred but for the fact that he was advancing the litigation, that he was working on the class action. And under the California Supreme Court's decision in Navalier, that means that Mr. Clark's actions did – or Anheuser-Busch's case against Mr. Clark arose out of those actions. Well, so their cause of action for breach of contract, is that but for his initiating litigation? Well, I think that's the harder of the four facts. And I still think the answer is yes. I understood that's what Judge Brell, to be saying, was that their breach of contract action had nothing to do with his initiating litigation. It had to do with he got this document that they claimed was confidential. Correct. And that was the core basis of the breach of contract claim. And their trade secrets claim. And it's Mr. Clark's activity. Not the filing of the lawsuit. Correct. And I think you're exactly right. But it is Mr. Clark's activities in connection with instigating the lawsuit, as Anheuser-Busch put it, that put him in a position where he was unable to sign. What's the difference between in furtherance of and incidental? That's what we're struggling with. That's what I'm struggling with. And that's why I went back and kind of focused attention on the Navalier's but-for analysis. And I think that's the most useful analysis for this Court to engage in. Would these activities that are the basis of Anheuser-Busch's case against Mr. Clark, would they have occurred but for the fact that he was instigating the class action lawsuit? And I think if you look at each of those four facts, the answer has to be no. That none of those things would have happened. Let's say Mr. Clark went to law school, left Anheuser-Busch, and the class action never happened. None of these things would have occurred. They occurred because Mr. Clark had instigated the lawsuit, was actively involved in doing so at the time that these actions happened. And I think that that's the analysis the Court can use and is most useful in determining that issue. Okay. You wanted to save 7 minutes. You're down to 58 seconds, but I'll give you some time for rebuttal. Okay. Thank you, Your Honors. Let's hear from Anheuser. May I have 30 seconds? Yes, of course. May it please the Court, good morning. My name is Mark Topel, and I am representing Anheuser-Busch. On this appeal with me is Dan Cook and Jacob Foster. The question I'm going to ask, I'm going to go right to your questions, Judge Hurwitz. I seriously have a contest with Clark's status as being a whistleblower. He did nothing ever to report any activity that he believed was illegal to either the state AG, the local AG. Is that correct? Yes, it is. And which the trial court never got to. The trial court never got to, and I encourage you. And you may have a, you know, I understand you want us to take this up. Absolutely. The record is complete below. Both were briefed extensively below. Well, what do I do with the absence of page 13? For all I know, it says Budweiser is the king of beers. Well, you look to the declaration under oath of Christy Skinner, a high-ranking executive who filed a declaration with this court which said that page 13 is a proprietary and trade secret containing very valuable information about the brewing process that their competitors would want. She ticked off all the identifiers for what is a trade secret under California trade secret law and said that it had extreme value to the company, that it was protected in a special limited access BIER on their computer program where not regular people could get to. She had to approve who could get there. They had to have a special access to get there. Everything that you say a trade secret is under the definition. Why don't I include this under seal in the record so that we could make our own determination? Because that's not a determination that you have to make or can make. Well, if we get to step two, we have to determine that you have a probability of success. You don't think anybody is going to have to look at exhibit 13? Absolutely. The trier of fact, when we get to that point. Right. But on step two, you have to convince us that you probably would win on this. I have, right. And I have Ms. Skinner's declaration who is a person absolutely qualified to give the opinions of her personal knowledge that this is a trade secret. You have in the step two the task of determining whether or not we have a probability, a reasonable probability of succeeding. But if I were the trial judge making this determination, could I say to you at the anti-SLAPP hearing, would you please produce page 13 for me? You could, sure. Certainly. And wouldn't I have a greater basis for then determining whether or not it was a trade secret? I don't think so, because I don't think it is your determination to make that determination once we have shown all the predicates for a trade secret. How can you say that Budweiser, which treated, or Anheuser-Busch, which treated this as a trade secret, kept it under, basically under seal, limited its use, says that it's a trade secret. Says that it contains all of these things. I don't think that that disqualifies us under step two to have shown this as a trade secret. Let me ask you a question we've been asking a lot of people this week, because a lot of people seem to have made the same pitch to us. We have a district court that didn't reach an issue. We have a developed record. Why should we decide that issue in the first instance rather than ask the district judge to decide it? Well, it's not easy for us. It requires more work from us. Because of the interlocutory appeal provision that applies to these cases. Which ought not to be appealable in Federal court, but that's not your point. I read your opinion. I read your concurring opinion. I already tried that, Robert. Right. It didn't work. I wish it had, but it didn't. I won't say anything. Because it will be another two and a half years before it's decided. If it goes back to Judge Burrell, we'll go in front of him and we'll argue that we more than adequately met stage two of the analysis. And he'll make a ruling and then it will be appealed again. And in 2017 or 18, we'll be addressing you again on that issue. Because I think it will stay with you guys. I'm not sure of the rule. Why don't you take a visit at step one? What Judge Burrell did. I'd like to. Yes, I will. Because if we agree with Judge Burrell, then that ends the matter. Right. The case law in California, in the California Supreme Court, is very clear at this point, that you look to the substance of what the lawsuit is. You don't look to the collateral consequences. You look to what are we doing here. And what we're doing here is we're suing Mr. Clark for misappropriation of a trade secret, which is a criminal act in California, as well as a tortious act. We are also suing him for breach of contract, which has at the very least nominal damages to satisfy the element of that. But let's assume he took an illegal act in furtherance of protected speech. Let's assume he stole your materials and make it, you know, in order to file a lawsuit. We all agree that filing a lawsuit is protected speech. So let's assume he engaged in a felony, stole your materials in order to. He's not protected under California law. So why isn't that in furtherance of a protected activity? I mean, he'd fail at step two, because your lawsuit against him would surely, surely be successful. But why isn't that furtherance, in furtherance of a protected activity? Because it in and of itself is a wrongful act. But California courts, but the courts, don't they say wrongful acts enough are not enough to disqualify you from acting in furtherance of a protected activity?  They say the first you have to go back to the analysis. The SLAPP Act is designed to protect First Amendment rights. And First Amendment does not. It does not protect crime. I read Navalier as saying criminal activity is not protected, but civil wrongfulness, whether statutory or otherwise, I think I'm quoting, is irrelevant under step one. So don't you have to show criminal activity in order to disqualify under step one? No, because you have to show what arises out of. That's just the very threshold, Judge Hurwitz. What arises out of? What is the it? Whether the activity you're suing arises out of protected activity. And here in Navalier, and I totally disagree with the idea there's a but-for test. Navalier was just describing the unique fact that it's convoluted history, a very convoluted history. Everything was a protected act. Well, but stop. It says, it says, Navalier says the suit against him arises from any act. He engaged in an act. Yes. In furtherance of the person's, et cetera, et cetera, right of protected activity. Why isn't the act he took, stealing your materials, in furtherance of his right to go to court? Because he can't do that under the First Amendment, and he can't do that. You can't commit a crime. This was a crime he committed that we say it's a violation of, I think, Penal Code 499C. And if it is criminal activity, then Navalier says we don't count it. I understand. Unless we can prove. You see, what you're not talking about is that to prove criminal activity, and in many cases have said as a threshold matter, is an impossible thing unless he admits he committed the crime. Right. Or we have this uncontroverted, like a jury verdict. So that's just to get in the door. The second point is, is does it arise out of protected activity? We sued him, and if you look at the complaint, we sued him for trade secret theft, which is something that Anheuser-Busch has to do to protect its trade secret. We say in the complaint that we're suing him not because he took it to a lawyer and talked about a lawyer. We're suing him because he stole a trade secret, and we sued him as soon as we had compelling proof that the trade secret had been taken and it was out in the world. Aren't you going to the second prong? I mean, the first step is whether it was considered related and referred to the protected activity. From what I read of your briefs, you know, it seems like you're arguing that the complaint against Mr. Clark was not based on his protected activity in part because its complaint does not actually reference Clark's class action lawsuit. But I don't know that the complaint has to explicitly refer to protected activity in order for a court to determine that the act was the basis of the complaint. And the next, it seems like you argue that Mr. Clark's receipt of confidential information was conduct. I think that's what you say. It cannot be protected because it was conduct rather than statements. But it seems like the California courts have held that virtually identical conduct, the receipt of confidential information for use in litigation, is covered activity. And that's the, I guess, Bergstein and Fitton and some other California cases. So how do you, I'm just trying to figure out, how do you reconcile your argument that Mr. Clark's receipt of this information is not protected just because it's conduct when you have these cases that fly in the face of that? Well, Fitton is, Fitton, first of all, was a legislative privilege. Litigation privilege. I'm sorry. Litigation. Thank you. That's what I meant. And ran directly a file of the Kimmel case in the California Supreme Court. And I'm just going to take a moment, if I may, to very briefly quote from Kimmel, who says, We note that the result urged by plaintiffs, an extension of section 47-2, litigation privilege, to unlawful conduct undertaken to obtain evidence in anticipation of litigation would lead to unacceptable consequences. Suppose a prospective defendant kept important documents at home. If the prospective plaintiff, in anticipation of litigation, burglarized defendant's premises in order to obtain evidence to use, plaintiff here would apparently apply the privilege to protect criminal conduct. Such an extension is untenable. But you're right. We are talking about the litigation privilege there. There's no claim of the litigation privilege. But the same thinking, if you read Navalier, and I've read it, City of Cotati. We've all read it, too. I'm not being, don't take that wrong. I don't want to offend you. I'm having more trouble understanding it than you are, but I'm not, we have read it. Yeah. And Equilon and Oasis, all of the cases in the California Supreme Court, they focus, they don't say that what did he do after he improperly stole this document. They don't say he went and he gave it to a lawyer, that that immunizes his activity. They don't say that. It doesn't immunize the activity. But we're suing him for the activity. No, I understand. But we're talking at step one. And so let me read the statute rather than the statute says the suit arises from any act of that person in furtherance of his protected activity. It doesn't say the suit arises from his protected activity. It says the suit arises from any act of that person in furtherance of his protected activity. And why isn't this an act in furtherance? It may be an illegal act in furtherance of his protected activity. You may have, I tend to think you do, a splendid lawsuit against him, but that's at step two. Why at step one isn't this an act in furtherance of his protected activity? The California Supreme Court in Navalier and City of Cotati in particular and Equilon addressed the issue of trying to focus on what is protected and what is not. And in order to decide But the lawsuit, surely the lawsuit is protected activity. The act doesn't have to be protected activity. It's an act in furtherance of the protected activity. Well, that's a view which I do not believe is consistent with the cases that we have cited, which say Isn't it consistent with the language of the statute? Well, but we have to, we're bound by how the California Supreme Court has interpreted that statute. And that statute, and they do give a broad interpretation. But then you have these cases, these self-help cases in anticipation of litigation or in litigation that to 99% degree are found that you cannot take an illegal act and use it to help yourself in your litigation. And I absolutely agree. I absolutely agree it's a matter of litigation privilege. But is that a step one analysis or a step two? Well, it's a step one analysis. And the courts of appeals, as Navalier, city of Katady, and Ecolon, and other cases in the courts of appeal, with very rare exceptions, have held that. And they say you're focused. And the way they did it, I think we're, we might be talking like this. Well, we're talking like this because I'm not finding the cases precisely clear. And I'm asking you to explain. Well, because they say you have to, to decide whether it arises out of protected activity, you have to look at what is being sued for. You look at the substance or the gravamen of what is being sued. And the fact that he may have taken it and used it in a judicial proceeding is not what you look at. That is considered incidental to the determination under step one. Time and time and time again. I mean, maybe you're. That's what Judge Burrell said. Incidental. It was incidental. Yes. Yes. And city of Katady and the others, a triad or a quadrat of cases that mostly Judge Werdiger, I think I have it, wrote. And I think he's absolutely right. But if there's a but-for test that applies here.  Well, but the cases talk about a but-for test. No, only Navalier in describing. After Navalier has decided the case. After deciding the case. Then they talk about, they talk about arising from. And I think if I could just have a second. Sure. To point out why the but-for test doesn't exist in California. It's wordage in the Navalier case after they've made their ruling of what you look at. Talking about the unique facts of the Navalier case. You had the federal court case. Then you had the state court case. Everything is in a protected context. Not like here where you have a theft case and you have a breach of contract case. They say that the mere fact that an action was filed after protected activity took place does not mean that the action arose from activity for the purposes of the anti-SLAP suit. They go on to say that the critical consideration is whether the cause of action is based on defendant's protected free speech or petitioning activity. Then after discussing how weird this case is because of the way it came in and all the ins and outs of it, she comments that but for the federal lawsuit in Slatton, who is the trustee in that, alleged actions taken in connection with the litigation plaintiffs present claims would have no basis. She's describing just the factual uniqueness of that case. She's not saying – because imagine what would happen. Everybody files a lawsuit and everybody files cross complaints. Are those SLAP actions? They're certainly in response to a protected activity. And, Judge Hurwitz, I think this is really an important – But for me, this is where the case holds. This is where the case holds. This is where this particular case turns. Yeah, I agree. Unless we go down to step two. I agree. Would you use the mic? Yes, I agree. I'm sorry. It's hard for me to sense. I agree. And I'm having the same trouble – well, the same trouble may be the wrong word. I'm reading Navalier. Navalier seems to have sort of a – we determined whether an act was in furtherance of protected activity. I'm distinguishing the lawsuit itself as filing the lawsuit itself or preparing for the lawsuit itself is plainly protected activity. No dispute. Nobody doubts that. So the question here is whether or not Mr. Clark's seemingly illegal and bad acts were in furtherance of that protected activity. And so he gets past step one. And the trial judge says in this case, no, they were merely incidental to it. And I'm still not sure how I – I'm still not sure how to make the distinction between incidental and in furtherance of, because it seems to me they were done for only one purpose. They were done in order to file a lawsuit. So they were surely in furtherance of that activity. They were bad acts in furtherance of that activity. What's your best case that shows that, you know, that this would be just incidental? Reliable resources, I think. Renewable. Renewable. But there's a clear distinction there. I don't see it. I read it as after you made your comment about it. That wasn't my understanding. Correct me if I'm wrong. Well, because what happened is there was a pending lawsuit, a fee action, that was going to be brought by the PR guy who was complaining, you didn't pay me enough. And he then sold the documents to the Germain law firm, which was eventually the law firm that was involved in the lawsuit. And they were the slap action. Right. But what was the evidence that when they bought the materials, they were buying them to file a lawsuit as opposed to buying them to find out the dirt about their opponent in the previous case? See, that's the distinction. Well, because the way they lay out, the way they lay out in reliable resources, the way they lay out the facts, they start with the fact that there is a threatened lawsuit for fee. It's a fee dispute. And then they go on to say, and the law firm, one of the law firms that becomes involved in this, Germain law firm in Anchorage, then comes and buys this information. And the purpose of buying the information may be multiple. There may be varied reasons why they bought the information. Maybe they wanted to write bad articles about other particular. But it's clearly. They were upset because there was one big contributor to their natural resources, to the resources group up in Alaska that funded the litigation up there. Yes. And they were after that. They wanted to get that piece of information so they could. So they could do what? File. Okay. But it was in the context. It certainly was in the context of the California, of a California action, which ultimately involved breach of contract. It just seems slightly more removed. In renewable resources, I can find it more removed because it's not so clear that they're going to run directly to the courthouse with it. And here, this guy is going to run directly to the courthouse with it. But that's my difficulty with renewable resources. It's your best case, I think. Well. The subjective intent issue, I thought, was put to rest in the city of Katahdi, about why the underlying act was done. And that's the companion case. Doesn't that go to the whistleblower defense, though? In other words, I don't think his subjective intent provides a defense to your lawsuit. I think somebody has to objectively measure whether or not this is stuff that was illegal. I actually read it the other way. And I would be the first to admit that the law here is murky, but I think it's very clear in one area that it's the subjective intent of the person suing. Right. And the other area is that it's the subjective intent of the person suing. And I think that's the other part that they're talking about, and that that doesn't matter. And that's why I think the press release is irrelevant. I think the press release is irrelevant. You may have had all kinds of bad motives, but unless it arises out of protected activity. Right. My settlement, whatever, I think all of that is completely irrelevant to the issues that we're dealing with here. And I have to come back because the cases, I believe any reading of the cases, leaves no room to argue that what is done with the stolen material determines whether or not you could sue him for stealing it, which is all we're doing. And we say in our – it's important to go back to the lawsuit where we say that we're suing you to protect the trade secret. And that's what the lawsuit says. Because if we don't do that, the trade secret – because at the time we filed the lawsuit, we finally knew that the trade secret had been disseminated out in the world. If you look at it, I'm not advocating going down that road right now, but in the excerpt of records here, it's very clear how this all arose. And the way we knew that page 13 had been put out in the world in the first instance is that a demand letter to the law firm that had sent its normal consumer fraud demand letter out to Anheuser-Busch demanded back, hey, do you have any trade secrets? And up popped page 13. And they gave it to us. And then all the forensic analysis and as-a-veto declaration. The problem here is, is that the Court has taken a position that the subsequent conduct, protected conduct, does not insulate the prior wrongdoing. Absolutely agree. So why can't we sue him? Nobody disagrees. The question is whether at step one the bad conduct that led to the lawsuit is in furtherance of that. At step two, the fact that this — that the fact that you engage in protected conduct never gets you past step two. Step two, we evaluate the merits of your lawsuit. That's where I'm having some difficulty. I think you've got a dandy lawsuit. But I'm just not sure it fails at step one. But, Judge, if that were the case, any time anybody stole something and then used it for — to help their litigation, that's the problem with the cases that they cite, like Park Searchlight, like Fenton, whether they're citing it in one or the other. That's not what is allowed. Well, that's what the case law seems to allow. You know, I read those cases and I thought, this is crazy. But that's what they seem to allow. And by the way, I'm sympathetic to your notion that you should have won at step  I don't know whether we should do that. So the difficulty with this and the interlocutory appeal is we have a judge who only does step one. Yeah. We come up on interlocutory appeal. You say, quite righteously, and I think correctly, you can't steal our stuff. And we say, you probably can't, but that doesn't — that may not disqualify you at step one. You've got to get to step two before it disqualifies you. Well, I — That's my — that's my problem with the case. And I — I'm sympathetic to the difficulty that I pose for you. That's the — that's the — that's the thing I need answered. Why is this a step one case and not a step two case? And I think you've — Because the judge properly focused on the gravamen of what we're suing him for. I know I sound like a broken record. No, I understand. But that's how I — Right. Yeah. They didn't want to get into — I think there's a kind of a policy reason behind this because of the plethora of — But it was breach of contract and trade secrets. Yes. So you're saying that, regardless of both — I mean, taking in both of those claims. So what do you have to be suing him for under your view to — for it to qualify? I'm adding — Now I'm on the horns of a dilemma here. Answer her question first, please. Well, I'm just saying — are you saying your response to step two goes to both breach of contract and the trade secrets? Yes. We have filed all the appropriate affidavits, and there is no basis under the local rule or anything else that we have to disclose the trade secret so long as we — we may choose to do so, but so long as we accurately provide admissible evidence that it is a trade secret. And once we have done that — and you have to take that in its best light. And what counter — has whatever counter — in this case, I don't think any evidence has been submitted — is not to be considered. You don't weigh the evidence as to whether this is a trade secret. It's whether or not — suppose Ms. Skinner came in and testified at — Like a preliminary injunction hearing. You could have put on live testimony, but you didn't. Yeah. But he hasn't rebutted it. I don't think — He hasn't rebutted it at all, and it's a complete record. It's been submitted on that point. I don't — I don't want to dump it — I'm not looking to make more — more work for — I was — I was kidding. Well, but I'm — I'm not. I mean, two and a half more years will be five years since we got to the — But — but — All right. I know you're 12 minutes over. Let me ask one question. I think you can answer it. That much? I know it's a little much. Twelve minutes over. What — what cause of — what cause of action, in your view, arising out of these activities would fall within step one of the analysis? We're talking — talking to — communicating with the lawyer for — for who's bringing the lawsuit. If we had sued him for communicating with the lawyer who's bringing the lawsuit or for bringing the lawsuit, it clearly would have been — wouldn't have passed muster in step one. I guess the only thing that — that I — I know I'm getting told to sit down and I — It's okay, Mr. Krishnan. All right. Well — Finish up. I'll allow — I'll allow some rebuttal time. There has to be a reason why the context — the post-act that's being sued for context has been divorced from the act itself in case after case after case. Because if you didn't, you could do anything you want, basically, as tortious or criminal as it was, file a lawsuit, which it was part of, and you would be immunized from tort or — or crime. And this was both, the tort and the crime. I don't know about — I don't think you'd be immunized from the crime. You might be able to get over a slap statute. Yeah. You'd be immunized civilly. I think that's more accurate.  I agree with you. But you'd pass step one. See, that's — Yeah. But not the criminal — Not their step two. Not their step two. Not the criminal prosecution. You just lose later in the analysis. I don't think — I don't think the — It's very helpful. I don't think the legislature ever anticipated that the staff litigation would come to what it — No. To where we're at today. It's crazy. It's crazy. It is crazy. And that's what I tried to say in our earlier case. But that's the way it goes. So — All right. That's my argument. I'll submit it to you. All right. Thank you, Mr. Topel. We appreciate your argument. All right. Thank you, Your Honor. You have a few minutes for rebuttal, though a lot was said. Thank you. Now, I just had a couple of points I wanted to address that came up. And one was, I think the discussion about the grave men of the claim and the defendant's activity is an interesting one. And I think you can make everything consistent here. I think first and foremost, yeah, you have to look at the grave men of the claims that are filed by the plaintiff. But once you know what those claims are, then the analysis really does shift and focus on the defendant's activities. And pursuant to the plain language of the anti-SLAPP statute, where there are activities in furtherance of the right to free speech and petition, which I think is certainly the case here. And I think what's going on is that the attempt to create this false dichotomy that the Navalier case talked about, where an action is either, I'm sorry, the action is either in furtherance of rights petition or it's incidental to. And it can certainly be both. And that's what Navalier said. And Trapp, the case I also said. You know, I don't want to spend too much time on this, but the grave men of their complaint is simply that he obtained possession of page 13. It was confidential. I agree. That's the grave men of their complaint. They don't care who he gave it to. Right. All they care is that he took it. Why is that in furtherance of your protected activity? It's similar for the misappropriations, the same thing. Well, and I agree. And I think that goes back to kind of Navalier's assessment of, hey, would this activity have occurred but for the class action litigation? Again, if you have to ask but for. Okay. No, I mean, I don't mean to be funny or anything, but the grave men of the complaint is obtaining possession. He obtains possession. That's contrary, they allege that's contrary to the agreement that he signed with Anheuser-Busch when he worked there. Okay. It doesn't matter if he gave it to Judge Morgill or to the lawyers in the case. He took that away from Anheuser-Busch. And that's what their breach of contract. That's the contract that he breached. Well, and I think. Okay. And then they have another theory as well, that same act of obtaining possession they allege constitutes a misappropriation of a trade secret. Why is the giving it to the lawyer part of the grave men or the grave men of their complaint? Well, if let's say it's not, and let's say the grave men of the complaint is simply the receipt of page 13. I think then the analysis still has to be done with respect to Mr. Clark. Why is it an act in furtherance of protected activity? The act in furtherance of protected activity is giving it to the lawyer or using it yourself as a lawyer. Why is can you can we separate the prohibited act, taking the information, and say that was preparatory to taking an act in. It was incidental to taking an act in. And that's what I understand Judge Barrell did. That's what the judge was saying.  Well, and I guess a couple of responses to that. One, misappropriation is both the receipt, well, three things. The receipt, the use, or the distribution of protected information. And then how can their suit be frivolous, not likely to win, if at least part of it is clearly okay? Well, there I think, and that's a great question. I think that's exactly what's addressed in the Trapp decision. The Trapp decision says if some of the action is protected and some of it is not, then the whole thing is subjected, is subject to the anti-SLAPP statute. At step one. At step one. Right. But you're saying, well, you know, to the extent they're suing us for just taking it, that might win. And if that might win, don't you fail at step two? Well, except I still have, I take issue with the fact that a trade secret has been approved in the first place here. Well, there's an affidavit, and I don't, maybe we shouldn't. They filed an affidavit describing at great length why this is a trade secret. Is there any evidence in front of the trial court that it wasn't a trade secret? There is. There's evidence that page 13 was widely accessible to visitors. Okay. That was in front of, widely accessible in Anheuser-Busch's facilities. Mm-hmm. So why can't the judge, why can't on the basis of that, we determine that they have determined that they're more probably not going to win? I'm sorry, I don't understand your question. They didn't disclose it at large. They didn't put it on the outside of the building with a spotlight on it. You're right. They may not have properly secured it against the possibility that somebody like your client might steal it. But does that mean it's not a trade secret? Absolutely, because you have to take action to protect your trade secret. And if you have your trade secret hanging on the wall in the facility in places where visitors are going to pass by, that's not keeping that secret very safe. And that's what the record in this case shows occurred. And it's undisputed. Okay. But my question was, you haven't presented any evidence that this wasn't a trade secret. Your argument is that they've waived trade secret protection through their actions. I guess the way I read the trade secret law, if you haven't taken the action, it's not a trade secret. So you're saying it's not a secret anymore. But the information in it is the information that is the information of trade secrets, correct? Well, see, I don't know, because all I have is one sentence from Christy Skinner. That's the employee of Anheuser-Busch. And we objected on the grounds of opinion. Okay. Yeah. Anything else? That's everything. Okay. Thank you very much. Thank you, counsel, for your very good arguments. It's an interesting case. Thank you. Thank you.
judges: Paez, Murguia, Hurwitz